IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ALLSTATE INSURANCE COMPANY**                                                        **PLAINTIFF**

v.                                                        Civil Action No.: 3:15-cv-00114-MPM-RP

**JOHN ROBERT SCARBROUGH**                                                        **DEFENDANT**

### ORDER

This matter comes before the Court on Allstate Insurance Company's ("Allstate") *Motion for Partial Summary Judgment as to the Automobile Liability Policy of Robert and Denise Scarbrough* [135]. John Robert Scarbrough ("John") and Kimberly and Rachel Holloway (collectively "the Holloways") have responded in opposition to the motion, to which Allstate filed a reply. Having reviewed the submissions of the parties, in addition to relevant evidence and authorities, the Court is now prepared to rule.

### I. Factual and Procedural Background

After growing up in Georgia, John Robert Scarbrough began attending the University of Mississippi in 2006 and eventually received his degree in December 2013. On April 6, 2012, John was involved in an automobile accident in Oxford, Mississippi. At the time of the accident, John was driving his white 2004 Toyota Tundra truck, which was titled in his name. Kimberly Holloway, one of John's co-workers at Proud Larry's restaurant in Oxford, and her sister, Rachel Holloway, were passengers in the truck at the time of the accident and allegedly suffered multiple injuries.[1]

At the time of the accident, John maintained an automobile liability policy issued by GEICO Insurance Company ("GEICO"). Moreover, John's parents, Robert and Denise

---

[1] Taylor Nelson and Margaret Zuckley were also passengers in the truck at the time of the accident. However, neither of those individuals is involved in this litigation.

Scarbrough, maintained two insurance policies with Allstate—an automobile liability policy and an umbrella policy. Both policies were undisputedly in effect at the time of the accident. Moreover, the Holloways' parents, Lewis and Starlyn Holloway, maintained a policy with State Farm Mutual Automobile Insurance Company ("State Farm") that provided uninsured motorist coverage for both Lewis and Starlyn, along with any resident relatives.

About a year later, on April 26, 2013, the Holloways filed an action in state court in Hinds County, Mississippi, attempting to obtain recovery for the injuries they sustained in the accident. In their complaint, the Holloways asserted negligence and gross negligence against John and negligent entrustment against Robert and Denise—his parents. The Holloways also asserted gross negligence and malicious conduct claims against GEICO and its agent, Dawn Lawson, due to GEICO's failure to provide payment to the Holloways under John's automobile liability policy. In addition, the Holloways asserted claims against State Farm for its failure to provide timely payment for their injuries under the uninsured motorist policy.

The case was later transferred to the Circuit Court of Lafayette County, Mississippi. At some point thereafter, the Holloways became aware of the Allstate policies that had been issued to Robert and Denise. The Holloways believed that the Allstate policies provided coverage for their injuries and that Allstate had unlawfully attempted to the hide existence of the policies from them. Thus, on July 3, 2015, the Holloways filed a motion to amend their complaint to add Allstate as a defendant.

On July 8, 2015, Allstate filed a separate action in this Court, requesting that it issue a declaratory judgment that neither of the policies issued to Robert and Denise provided coverage for the Holloways' injuries. Specifically, Allstate asserted that the policies had not been triggered because "various requirements of the policies are not met. For one, the alleged

2

tortfeasor, John Scarbrough, was not a resident of the household of the insureds at the time of the accident." In the amended complaint, Allstate asserts that it filed this action because "it has become evident that [Rachel and Kimberly Holloway] will seek to invoke the Allstate policies of Robert M. and Denise Scarbrough." Allstate joined the Holloways as necessary parties to the action, asserting that their rights may be affected by the case's outcome.

Thereafter, on July 16, 2015, the Holloways filed their amended complaint in the Lafayette County Circuit Court action adding Allstate as a defendant, seeking a declaration that the Allstate policies issued to Robert and Denise do, in fact, provide coverage for their injuries and further alleging bad faith breach of contract and fraud.

Returning to the present action, on April 4, 2016, the Holloways filed an answer to the amended complaint, a crossclaim against John Scarbrough, a counterclaim against Allstate, and a third party complaint against GEICO, Dawn Lawson, and State Farm. These claims mirror the claims made by the Holloways in the underlying state court action, largely containing language identical to their state court complaint. On November 7, 2016, this Court issued an order denying motions to dismiss filed by Allstate and John but granting GEICO and Dawn Lawson's motions to dismiss since those parties were improperly joined in this action pursuant to Federal Rule of Civil Procedure 14. Moreover, the Court also issued an order on December 15, 2016, separating the trials for the Holloways' personal injury claims against John and the claims concerning the coverage issues associated with the Allstate policies.

Allstate has filed two motions for partial summary judgment—one concerning the automobile liability policy and one concerning the umbrella policy. This order will address Allstate's motion as to the automobile liability policy, and the Court will consider the motion as to the umbrella policy in a separate order. The present motion has been fully briefed by the

parties, and upon due consideration of the parties' arguments, in addition to relevant case law and evidence, the Court finds that the motion should be granted.

## II. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Once the moving party shows there is no genuine dispute as to any material fact, the nonmoving party "must come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.' " *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1075.

## III. Discussion

As a preliminary matter, the Court notes that the contract at issue—the Allstate liability policy—contains a choice of law clause, specifically stating that "any and all claims or disputes in any way related to this policy shall be governed by the laws of Georgia." This Court has previously recognized that when a contract contains a choice of law clause, the law of the chosen

4

state will be applied to govern the parties' contractual rights and duties unless: "(1) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (2) applying the chosen state's law would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." *Lagrone Const., LLC v. Landmark, LLC*, 40 F.Supp.3d 769, 777 (N.D. Miss. 2014) (quoting Restatement (Second) of Conflict of Laws § 187 (1971)).

Applying this standard, the Court finds that Georgia law—the law chosen by the parties—should govern this dispute. The two policyholders, Robert and Denise, are Georgia citizens. Additionally, the parties have not identified any fundamental policy of Mississippi that the application of Georgia law would violate. In fact, none of the parties raise this issue in their arguments whatsoever. The Court will therefore apply Georgia contract law to the extent that such law is necessary in deciding this matter but notes that Georgia and Mississippi law appear to be largely similar in the areas relevant to this case.

Under Georgia law, "[w]hen an insurance contract is deemed to be ambiguous, it will be construed liberally against the insurer and most favorably for the insured." *State Farm Mut. Auto Ins. Co. v. Staton*, 685 S.E.2d 263, 265 (2009). However, the court "may not strain the construction of the policy so as to discover an ambiguity." *Id.* at 265-66 (quoting *Shaw v. State Farm Mut. Ins. Co.*, 129 S.E.2d 85 (1962)). The rule of liberal construction cannot be used to create an ambiguity where one does not exist, and "where the language fixing the extent of liability of an insurer is unambiguous and but one reasonable construction is possible, the court

5

must expound the contract as made." *Id.* at 266 (quoting *Cotton States Mut. Ins. Co. v. Bowden*, 221 S.Ed.2d 832 (1975)).[2]

With these principles in mind, the Court now turns to the contract in dispute. The relevant portion of the policy provides that it "protects an insured person from liability for damages arising out of the ownership, maintenance or use, loading or unloading of an insured auto." Thus, in order for coverage to exist, the accident must involve an "insured person" and an "insured auto," making the definitions of those terms critically important. The contract provides the following definition for "insured persons":

**Insured Persons**

1. While using your insured auto:
   a) you[3];
   b) any resident; and
   c) any other person using it with your permission.

2. While using a non-owned auto:
   a) you; and
   b) any resident relative using a four wheel private passenger auto or utility auto.

3. Any other person or organization liable for the use of an insured auto if the auto is not owned or hired by this person or organization provided the use is by an insured person under (1) or (2) above.

---

[2] The Court notes that these principles mirror Mississippi law on this point. Under Mississippi law, "[a]mbiguous terms in an insurance contract are to be construed most strongly against the preparer, the insurance company." *South Carolina Ins. Co. v. Keymon*, 974 So.2d 226, 230 (Miss. 2008); *see also State Farm Mut. Auto. Ins. Co. v. White*, 2016 WL 4702372, at *2 (S.D. Miss. Sept. 7, 2016) ("Ambiguous language should be construed against the insurer, as the drafter of the policy, and in favor of the insured.") (internal citation omitted). However, "[a]lthough ambiguities in an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So.2d 1371, 1373 (Miss. 1981)).
[3] For the purposes of this policy, "you" refers to Robert and Denise Scarbrough—the named policyholders.

Regarding "insured autos" the contract states:

**Insured Autos**

1. Any auto described on the Policy Declarations and the four-wheel private passenger auto or utility auto you acquire during the policy period as a replacement.

2. An additional four-wheel private passenger auto or utility auto you acquire ownership of during the policy period. This auto will be covered if we insure all other private passenger autos or utility autos you own. You must, however, notify us within 60 days of acquiring the auto and pay any additional premium.

3. A substitute four-wheel private passenger auto or utility auto, not owned by you or a resident, being temporarily used while your insured auto is being serviced or repaired, or if your insured auto is stolen.

4. A non-owned four wheel private passenger auto or utility auto used by you or a resident relative with the permission of the owner. This auto must not be available or furnished for the regular use of an insured person.

The Court notes that the "Definitions" section of the contract provides that "**Resident** or **Reside** means the physical presence in your household with the intention to continue living there. Unmarried dependent children while temporarily away from home will be considered residents, if they intend to continue to live in your household." Relying on this language, in its order issued on September 19, 2016, the Court stated that the issue of whether John was a resident hinged upon his intent, namely whether he intended to continue to live in his parents' household. The Court further held that this determination is a fact question for a jury to decide.

Allstate asserts that it is entitled to summary judgment regardless of whether John is considered a "resident" because "John was not operating an 'insured auto' within the definition of the policy at the time of the loss[.]" As quoted above, the "Insured Autos" section has four subparts. Allstate asserts that none of those sections are applicable, making coverage nonexistent. In opposition, John and the Holloways argue that the contractual language is

ambiguous and should, therefore, be construed in favor of coverage. In accordance with the analysis set forth hereinafter, the Court agrees with Allstate's position.

As set forth above, the first subsection for "Insured Autos" includes "[a]ny auto described on the Policy Declarations and the four-wheel private passenger auto or utility auto you acquire during the policy period as a replacement." The policy declaration only includes a 2004 Cadillac Escalade and a 2004 Lexus LS430. Moreover, John's truck was not a replacement auto for either of those two autos. Accordingly, the first subsection is not applicable.

The second subsection provides coverage for additional autos acquired during the policy period. The policy period was January 19, 2012 to July 19, 2012. Both John and Robert testified that John purchased the truck from Robert well before the policy period.[4] Therefore, John's truck was not acquired during this time period, and this subsection is also inapplicable.

The third subsection provides coverage for a replacement auto being used while an insured auto is being repaired, serviced, or if it is stolen. This section is also inapplicable to the case at hand, as John's truck was not a replacement auto. In fact, he had been driving the truck since approximately 2006.[5]

The final subsection provides coverage for "[a] non-owned four wheel private passenger auto or utility auto used by you or a resident relative with the permission of the owner. This auto must not be available or furnished for the regular use of an insured person." This subsection creates the basis of the parties' dispute.

Arguing that this subsection does not provide coverage, Allstate asserts that:

---

[4] In their depositions, both John and Robert testified that John "purchased" the truck from Robert. However, John testified that he didn't pay anything for the truck, and Robert testified that he cannot remember the price. Nevertheless, it is undisputed that John acquired the truck from Robert—regardless of the price—well before the policy period.
[5] The Court notes that neither John nor the Holloways seriously dispute that the first three subsections do not apply in this case.

If John is considered a resident relative, which Allstate alleges he is not, the inquiry goes no further: no coverage is afforded pursuant to this subsection. If John is not considered a resident relative, there remains no coverage afforded under this policy because the truck unquestionably was available for his regular use. In fact, the truck was his main form of transportation and was his "every day" vehicle.

Thus, Allstate avers that this subsection does not provide coverage, regardless of whether John is considered a "resident." On the other hand, John avers that:

[T]he language upon which Allstate bases its denial of coverage is highly ambiguous. While the vehicle in question was available to John for his regular use, it was unavailable to either of his parents, Robert or Denise. This has the effect of making the vehicle unavailable for the use of insured persons Robert and Denise Scarbrough, meaning that it would fit within the definition of "non-owned" vehicle. Further, the two sentences—one extending coverage to usage of non-owned vehicles, the other excluding coverage of non-owned vehicles—appear to make a distinction between the terms "resident relative" and "insured person." In either case, Allstate's interpretation of the clause that it excludes John's vehicle from coverage is not the only reasonable interpretation.

While the Court appreciates John's attempt to portray the contract language as ambiguous, it is unpersuaded. In the Court's view, the language at issue clearly does not provide coverage. As quoted above, the relevant language defines an "insured auto" as "[a] non-owned four wheel private passenger auto or utility auto used by you or a resident relative with the permission of the owner. This auto must not be available or furnished for the regular use of an insured person."

Presuming that John is an "insured person" under the contract, this subsection is inapplicable as any auto furnished for the regular use of an "insured person" is excepted. According to the deposition testimony, John's truck has been available and regularly used by him for many years, making coverage inapplicable. However, the contract also precludes coverage if John is not considered an "insured person" because the first sentence requires that the auto be used by a policyholder or a resident relative. The Court is not persuaded by John's

9

attempt to create an ambiguity between the terms "resident relative and "insured person." The "Insured Persons" section, which the Court quoted above, clearly states that a relative is included in the definition of an "insured person" for the purposes of the contract. Therefore, it appears clear to this Court that the policy's language of "resident relative" in one sentence followed by "insured person" in the next does not create an ambiguity such that the contract must be construed in favor of John.

The Court rejects John's efforts to characterize the contractual language as ambiguous. *See Staton*, 685 S.E.2d at 266 ("[T]he rule of liberal construction of an insurance policy cannot be used to create an ambiguity where non, in fact, exists."); *Keymon*, 974 So.2d at 230 ("Although ambiguities in an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.").

Relying on this analysis, the fourth subsection—like the previous three—does not provide coverage. Therefore, as asserted by Allstate, regardless of whether John is considered an "insured person," he was not operating an "insured auto" at the time of the accident. Therefore, the automobile liability policy does not provide coverage and Allstate is entitled to summary judgment as to that policy.

**Conclusion**

Accordingly, it is hereby, ORDERED that Allstate's *Motion for Partial Summary Judgment as to the Automobile Liability Policy of Robert and Denise Scarbrough* [135] is GRANTED.

SO ORDERED, this the 20th day of March, 2017.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**