IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ALLSTATE INSURANCE COMPANY**                                                      **PLAINTIFF**

v.                                                                                    Civil Action No.: 3:15-cv-00114-MPM-RP

**JOHN ROBERT SCARBROUGH**                                                       **DEFENDANT**

**ORDER**

Now before the Court is Allstate Insurance Company's ("Allstate") *Motion for Partial Summary Judgment as to the Required Underlying Insurance Provision of the Personal Umbrella Policy* [129]. The Court previously granted Allstate's motion for partial summary judgment concerning Robert and Denise Scarbroughs' automobile liability policy and now turns to Allstate's motion concerning the couple's umbrella policy. John Scarbrough ("John") and Rachel and Kimberly Holloway (collectively "the Holloways") filed responses in opposition to the motion, Allstate filed a rebuttal, and the Holloways filed a surrebuttal.[1] Upon review of these submissions, along with relevant authorities and evidence, the Court is now prepared to rule.

**Relevant Background**

The Court has recited the facts of this case numerous times in ruling on various motions filed by the parties. However, in the spirit of thoroughness, the Court will again provide a summary of the circuitous circumstances that have led the action to its present posture.

On April 6, 2012, John—a student at Ole Miss—was involved in an automobile accident in Oxford, Mississippi. At the time of the accident, John was driving his white 2004 Toyota Tundra truck, which was titled in his name. Kimberly Holloway, one of John's co-workers at

---

[1] The Holloways did not request leave to file to file their surrebuttal brief. Nonetheless, the Court has reviewed this filing and taken it into account in reaching its conclusion.

1

Proud Larry's restaurant in Oxford, and her sister, Rachel Holloway, were passengers in the truck at the time of the accident and allegedly suffered multiple injuries.[2]

At the time of the accident, John maintained an automobile liability policy issued by GEICO Insurance Company ("GEICO"). Moreover, John's parents, Robert and Denise Scarbrough, maintained two insurance policies with Allstate—an automobile liability policy and an umbrella policy, which were both undisputedly in effect when the accident occurred. Moreover, the Holloways' parents, Lewis and Starlyn Holloway, maintained a policy with State Farm Mutual Automobile Insurance Company ("State Farm") that provided uninsured motorist coverage for both Lewis and Starlyn, along with any resident relatives.

About a year later, on April 26, 2013, the Holloways filed an action in state court in Hinds County, Mississippi, attempting to obtain recovery for the injuries they sustained in the accident. In their complaint, the Holloways asserted claims for negligence and gross negligence against John and a claim for negligent entrustment against Robert and Denise—his parents. The Holloways also asserted gross negligence and malicious conduct claims against GEICO and its agent, Dawn Lawson, due to GEICO's failure to provide payment to the Holloways under John's automobile liability policy. In addition, the Holloways asserted claims against State Farm for its failure to provide timely payment for their injuries under the uninsured motorist policy.

The case was later transferred to the Circuit Court of Lafayette County, Mississippi. At some point thereafter, the Holloways became aware of the Allstate policies that had been issued to Robert and Denise. The Holloways believed that the Allstate policies provided coverage for their injuries and that Allstate had unlawfully attempted to hide the existence of the policies from

---

[2] Taylor Nelson and Margaret Zuckley were also passengers in the truck at the time of the accident. However, neither of those individuals is involved in this litigation.

them. Thus, on July 3, 2015, the Holloways filed a motion to amend their complaint to add Allstate as a defendant.

On July 8, 2015, Allstate filed a separate action in this Court, requesting that it issue a declaratory judgment that neither of the policies issued to Robert and Denise provided coverage for the Holloways' injuries. Specifically, Allstate asserted that the policies had not been triggered because "various requirements of the policies are not met. For one, the alleged tortfeasor, John Scarbrough, was not a resident of the household of the insureds at the time of the accident." In the amended complaint, Allstate asserts that it filed this action because "it has become evident that [Rachel and Kimberly Holloway] will seek to invoke the Allstate policies of Robert M. and Denise Scarbrough." Allstate joined the Holloways as necessary parties to the action, asserting that their rights may be affected by the outcome of the case.

Thereafter, on July 16, 2015, the Holloways filed their amended complaint in the Lafayette County Circuit Court action adding Allstate as a defendant, seeking a declaration that the Allstate policies issued to Robert and Denise do, in fact, provide coverage for their injuries and further alleging bad faith breach of contract and fraud.

Returning to the action pending in this Court, on April 4, 2016, the Holloways filed an answer to the amended complaint, a crossclaim against John Scarbrough, a counterclaim against Allstate, and a third party complaint against GEICO, Dawn Lawson, and State Farm. These claims mirror the claims made by the Holloways in the underlying state court action, largely containing language identical to their state court complaint.

On November 7, 2016, the Court issued an order denying motions to dismiss filed by Allstate and John but granting GEICO and Dawn Lawson's motions to dismiss since those parties were improperly joined in this action pursuant to Federal Rule of Civil Procedure 14.

3

Moreover, the Court also issued an order on December 15, 2016, separating the trials for the Holloways' personal injury claims against John and the claims concerning the coverage issues associated with the Allstate policies. On March 20, 2017, the Court granted Allstate's motion for partial summary judgment concerning the automobile liability policy, finding that coverage did not exist under that policy.

The Court will now address Allstate's motion for summary judgment regarding the Scarbroughs' umbrella policy. For the reasons set forth hereinafter, the Court finds that summary judgment is appropriate and, thus, that the motion should be granted.

## Standard for Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Smith v. Jaco*, 2013 WL 1736660, *2 (N.D. Miss. Apr. 19, 2013) (quoting *Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir. 1994)). Of course, at the summary judgment stage, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion" and "factual controversies are to be resolved in favor of the non-movant[.]" *Walls v. Pontotoc Health Servs., Inc.*, 2017 WL 1011478, *2 (N.D. Miss. Mar. 14, 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

If the moving party meets its initial burden of showing there is no genuine dispute as to any material fact, the nonmoving party must "come forward with specific facts showing a

genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). And while "[d]oubts are to be resolved in favor of the nonmoving party," summary judgment cannot be defeated with "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (additional citations omitted). "If the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party,' then there is a genuine dispute as to a material fact, and summary judgment must be denied." *Evans v. Santos*, 2017 WL 590301, *2 (Feb. 14, 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## Discussion

As an introductory matter, the Court notes that the policy at issue—the Scarbroughs' umbrella policy—specifically states that "the laws of Georgia shall govern any and all claims or disputes in any way related to this policy." As the Court set forth in its previous order concerning the Scarbroughs' liability policy, it has previously recognized that when a contract contains a choice of law clause, the law of the chosen state will be applied to govern the parties' contractual rights and duties unless: "(1) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (2) applying the chosen state's law would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." *Lagrone Const., LLC v. Landmark, LLC*, 40 F.Supp.3d 769, 777 (N.D. Miss. 2014) (quoting Restatement (Second) of Conflict of Laws § 187 (1971)).

5

The Court finds that Georgia law should govern this dispute. The policyholders, Robert and Denise, are Georgia citizens, which creates a reasonable basis for the parties' decision to make Georgia law applicable. In addition, the parties have not identified, and the Court is unaware of, any fundamental policy of Mississippi that would be contradicted by the application of Georgia law to this dispute. However, as shown hereinafter, the substantive area of the law applicable in this matter—interpretation of insurance contracts—appears to be largely identical under Georgia and Mississippi law.[3]

Under Georgia law, "[w]hen an insurance contract is deemed to be ambiguous, it will be construed liberally against the insurer and most favorably for the insured." *State Farm Mut. Auto Ins. Co. v. Staton*, 685 S.E.2d 263, 265 (2009). However, the court "may not strain the construction of the policy so as to discover an ambiguity." *Id.* at 265-66 (quoting *Shaw v. State Farm Mut. Ins. Co.*, 129 S.E.2d 85 (1962)). The rule of liberal construction cannot be used to create an ambiguity where one does not exist, and "where the language fixing the extent of liability of an insurer is unambiguous and but one reasonable construction is possible, the court must expound the contract as made." *Id.* at 266 (quoting *Cotton States Mut. Ins. Co. v. Bowden*, 221 S.Ed.2d 832 (1975)).[4]

---

[3] The Court notes that this analysis mirrors its analysis in determining the law to apply to the parties' dispute as to the automobile liability policy. The Court, nevertheless, included it in this order for the purpose of clarity.

[4] These principles are synonymous to Mississippi law on this point. Under Mississippi law, "[a]mbiguous terms in an insurance contract are to be construed most strongly against the preparer, the insurance company." *South Carolina Ins. Co. v. Keymon*, 974 So.2d 226, 230 (Miss. 2008); *see also State Farm Mut. Auto. Ins. Co. v. White*, 2016 WL 4702372, at *2 (S.D. Miss. Sept. 7, 2016) ("Ambiguous language should be construed against the insurer, as the drafter of the policy, and in favor of the insured.") (internal citation omitted). However, "[a]lthough ambiguities in an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So.2d 1371, 1373 (Miss. 1981)).

Having set forth these standards, the Court now turns to the policy itself. The policy provides an occurrence limit of $2,000,000 and has a minimum required underlying limit of $250,000 per person and $500,000 per accident. Regarding scope, it provides that Allstate will cover any occurrence arising out of "[p]ersonal activities of an insured person, including the permissive use of a land vehicle or watercraft owned by an insured person." The contract defines an "insured person" as "any person related to [Robert and Denise Scarbrough] by blood, marriage or adoption who is a resident of [Robert and Denise Scarbrough's] household." Because John was engaged in the permissive use of a land vehicle at the time of the accident, the policy provides coverage if he is determined to be an "insured person" under the policy. And since he is unquestionably related to Robert and Denise, whether he is an "insured person" will hinge upon the determination of whether he is a "resident" of their household. However, unlike the liability policy which specifically defined "resident" for the purposes of that policy, the umbrella policy does not provide a definition for "resident."

On this point, Georgia law provides that "[i]t is generally recognized that a person may, and many people do, have more than one residence[.]" *Travelers Ins. Co. v. Mixon*, 162 S.E.2d 830, 831 (Ga. Ct. App. 1968). Moreover, the Court of Appeals of Georgia has also stated that "it has long been held by the numerous decisions of our appellate courts that the questions of domicile and residence are mixed questions of law and fact and are ordinarily one for a jury to determine." *Baldwin v. State Farm Fire & Cas. Co.*, 590 S.E.2d 206, 207 (Ga. Ct. App. 2003); *Daniel v. Allstate Ins. Co.*, 660 S.E.2d 765, 769 (Ga. Ct. App. 2008).

Taking this authority into account, the Court finds, and has stated in previous orders, that the issue of John's residence is a fact question that should be determined by a jury. Allstate argues, however, that it is entitled to partial summary judgment even assuming that John is an

7

"insured person" under the policy. Therefore, the Court will assume, for purposes of this order alone, that John is an "insured person" under the policy.

Allstate states that it "requests an order of partial summary judgment that, even if Scarbrough is considered an insured under the policy (which Allstate asserts he is not), the umbrella policy does not provide coverage for the Holloway plaintiffs unless and until each respective plaintiff has attained a verdict in excess of $250,000.00 (the per person required underlying coverage limits)." Thus, Allstate's request at this stage is not for a declaration that the policy provides no coverage whatsoever but, rather, that the Court issue an order that the umbrella policy does not become effective unless and until Rachel or Kimberly attain a verdict greater than $250,000—the required underlying limit.[5]

John's response appears, in this Court's view, to largely agree with Allstate's position, specifically stating that "regardless of whether Allstate's underlying automobile liability policy applies, John still, indisputably has coverage under the umbrella policy if he is (1) an insured individual under the policy . . . and (2) either (not each, as contended by Allstate) of the Holloways obtain a judgment against him in excess of $250,000."

---

[5] Allstate, of course, reserves the right to argue at trial that John is not an "insured person" and, thus, that the policy provides no coverage whatsoever.

In response to John's position, Allstate states in its rebuttal that "it appears as though Scarbrough and Allstate are essentially speaking the same language." Allstate then continues to state an example, which serves to provide some clarity to this rather convoluted case:

> [I]f Kimberly Holloway were to obtain a verdict against Scarbrough (exclusive of punitive and other disallowed damages) in the amount of $249,000.00, there would be no exposure under the Allstate state umbrella policy as to Kimberly. If Rachel Holloway obtained a verdict of $251,000.00 against Scarbrough (exclusive of punitive and other disallowed damages), the exposure for Rachel would be $1,000.00. Under these scenarios, Allstate's total exposure would be $1,000.00. There would be no coverage implicated for Kimberly's verdict, because the same did not exceed the $250,000.00 per person required underlying limit.

The example provided by Allstate is consistent with the Court's interpretation of the policy.[6] The policy specifically states that "there will be no coverage for any insured person under the policy *until the damages exceed the Required Underlying Insurance limit for that exposure*." (emphasis added). The policy provides required underlying limits of $250,000 per person and $500,000 per accident. This language is unambiguous and, as a result, must be applied as written. *See Staton*, 685 S.E.2d at 266. Therefore, the Court agrees with Allstate's position that there is no coverage under the umbrella policy unless and until the required underlying limits are exceeded.

For the purpose of clarity, the Court notes that while John did not maintain his own personal liability policy in an amount that met the required underlying limits discussed above and the Court has already determined that Robert and Denise's liability policy does not provide coverage for him, the umbrella policy still provides coverage for any amount exceeding the required underlying limits that John, as an "insured person" under the policy, becomes required to pay. Of course, this statement assumes that John is an "insured person."

---

[6] The Court also notes that this appears to be consistent with John's position.

**Conclusion**

For the foregoing reasons, the Court finds that Allstate's request that the Court issue an order that the umbrella policy does not become effective unless and until Rachel or Kimberly attain a verdict greater than $250,000—the required underlying limit—is well-taken.  The Court again notes, however, that this ruling is only applicable if John is found to be an "insured person" by a jury.

Accordingly, it is hereby ORDERED that Allstate's *Motion for Partial Summary Judgment as to the Required Underlying Insurance Provision of the Personal Umbrella Policy* [129] is GRANTED.

SO ORDERED, this the 25th day of April, 2017.

<u>/s/ MICHAEL P. MILLS</u>
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**